# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MATTHEW CARTIA and AUTUMN ADAMS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) No. 4:21 CV 409 DDN |
| BRADLEY BEEMAN, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This action is before the Court on defendants' motion for summary judgment and other pretrial motions.  [Docs. 53, 74, 80, 82.]  The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The Court has original subject matter jurisdiction over plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331 (federal question) and over the Missouri state law claims pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction).

After hearing oral argument, and reviewing the record and the briefs, the Court concludes that defendants are entitled to summary judgment.

## I.  BACKGROUND

Plaintiffs Matthew Cartia and Autumn Adams commenced this action against defendants in the Circuit Court of Lincoln County, Missouri, asserting claims under 42 U.S.C. § 1983 and Missouri state law following their arrests on April 20, 2018.  Named as defendants are Lincoln County Sheriff's Office Detectives Bradley Beeman, Mason McNail, Kevin Gugliano, and Timothy Livingston; Lincoln County Jail Correctional Officers Rebecca A. Carroll and Katie Brooks; John Cottle, Sheriff of Lincoln County; and Lincoln County, Missouri.  Plaintiffs sue all individual defendants in their individual and

official capacities. Defendants removed the action to this Court based upon the existence of federal question jurisdiction granted by 28 U.S.C. § 1331.

In their first amended complaint (FAC) (Doc. 30) plaintiffs allege the following. On April 20, 2018, detectives Beeman, McNail, Gugliano, and Livingston had completed an investigation at a residence located at 2 Pico Court, Moscow Mills, Missouri. The investigation did not involve or include plaintiffs. Matthew Cartia, who resided at 2 Pico Court with his parents, arrived there by motor vehicle with his fiancé, Autumn Adams, after the investigation had concluded, but while Beeman, McNail, Gugliano, and Livingston were still present. Plaintiffs started to record the activities of the detectives outside the home on their cell phones. Defendants ordered them to stop recording and plaintiffs refused. When plaintiffs refused to stop recording, Beeman placed Cartia under arrest. Plaintiffs allege that, even though Cartia did not resist arrest, Beeman and Gugliano punched, kicked, pushed, and slammed Cartia to the ground while he was already handcuffed and restrained. Beeman and Gugliano used their weight to cause Cartia's movements to be restricted and choked him despite the fact that he was already handcuffed and posed no threat to them. Beeman, McNail, Gugliano, and Livingston then yelled threats and derogatory statements at them.

Plaintiffs further allege that while this was occurring, Adams reached out to help Cartia. Either Gugliano or Livingston grabbed Adams and used excessive and unreasonable force, injuring her. While placing Cartia in a patrol car, Beeman, McNail, Gugliano, and/or Livingston caused injury to Cartia's head, neck and other portions of his body. Cartia was taken to Mercy Hospital Lincoln and then to the Lincoln County Jail. Adams was also taken to the Lincoln County Jail. There both plaintiffs were held overnight and released the following day.

Plaintiff Cartia alleges that while detained in the Lincoln County Jail, Correctional Officers Rebecca Carroll and Katie Brooks wrongfully detained him by placing him in a restraint chair in response to his request for water and to use the restroom and denied him access to both. Adams alleges she was denied use of the restroom. Both assert that when

they asked to be provided with these items their requests were denied and that Carroll and Brooks responded by yelling, cursing, and threatening them.  Plaintiffs allege they were wrongfully charged with the Class A misdemeanor of Resisting Arrest by the Lincoln County Prosecuting Attorney's Office, as the charges were later dismissed.

### *Claims based on federal law*

Both plaintiffs assert the following federal law claims under 42 U.S.C. § 1983:

**Counts 9 and 10**:   Use of excessive force during their arrests and seizure, against defendants Beeman, Gugliano, McNail, Livingston, and Lincoln County, in violation the Fourth, Fifth, and Fourteenth  Amendments;

**Counts 11 and 12:** Malicious prosecution, against defendants Beeman, Gugliano, McNail, Livingston, and Lincoln County, in violation of the Fourth and Fourteenth Amendments;

**Counts 15 and 16:**  Cruel and unusual punishment against defendants Carroll, Brooks, and Lincoln County, in violation of the Fourth, Eighth, and Fourteenth Amendments; and

**Count 20:**    Implementing a policy to arrest, detain, and prosecute individuals without probable cause and to arrest individuals against whom law enforcement had used excessive force, against defendants Lincoln County and Sheriff John Cottle, in violation of the Fourth, Eighth, and Fourteenth Amendments.

### *Claims based on Missouri state law*

Plaintiffs also bring the following claims based on violations of Missouri state law:

**Counts 1 to 4 and 19:**     Assault and battery, against defendants Carroll, Brooks, Beeman, Gugliano, and Livingston;

**Counts 5 and 6:**    Malicious prosecution, against defendants Beeman, Gugliano, McNail, and Livingston;

**Counts 7 and 8:**     False arrest and false imprisonment, against defendants Beeman, Gugliano, McNail, Livingston, and Lincoln County; and

**Counts 13, 17, and 18:**     Negligence and dereliction of ministerial duties against defendants Carroll, Brooks, Beeman, Gugliano, McNail, and Livingston.

*Motion for summary judgment*

Defendants move for summary judgment on all counts. (Doc. 53.) They argue the uncontroverted evidence shows that when plaintiffs did not comply with their instructions, the defendant officers then placed them under arrest.  Defendants argue plaintiffs have proffered no evidence of malice on the part of any defendant and that plaintiffs lack the evidence necessary to prove the elements of their alleged claims.  In the alternative, defendants contend that even if either plaintiff were able to present the requisite evidence, their claims fail as a matter of law because each of the defendant officers is entitled to qualified immunity from suit on plaintiffs' federal claims, and likewise have official immunity from suit on plaintiffs' state law claims.  Finally, they note that John Cottle, the elected sheriff of Lincoln County, was not present at the scene of the arrests, and neither Lincoln County nor Cottle can be held vicariously liable for the conduct of the other defendant officers.  Defendants contend both Cottle and Lincoln County are immune from suit since neither Lincoln County nor Cottle adopted any policy or custom approving of any allegedly unlawful conduct.  In support of their motion, defendants submitted the following evidence: plaintiffs' own four-minute video recording of the April 20, 2018 incident; excerpts of plaintiffs' depositions; defendants' affidavits; and the incident report from the search of the 2 Pico Court residence.   Defendants seek the entry of judgment against plaintiffs and the costs of the action.

Plaintiffs oppose the motion, as described more fully below, and submitted many exhibits.

## II.  DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Eighth Circuit has stated:

> On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.... The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

*Wood v. SatCom Marketing, LLC*, 705 F.3d 823, 828 (8th Cir. 2013) (quoting *Torgerson v. City of Rochester*, 643 F.d3d 1031, 1042 (8th Cir. 2011) (en banc)).  "To clarify, '[a]lthough the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" *Wood, id.* (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34,* 528 F.3d 1074, 1078-79 (8th Cir. 2008)).

## PLAINTIFFS' FEDERAL LAW CLAIMS

The Court addresses defendants' assertion of qualified immunity from suit as a defense to  plaintiffs' federal claims under § 1983.

### Qualified Immunity

Qualified immunity protects governmental officials from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether this applies to defendants, the Court considers two questions.  First, did the respective defendant violate a constitutional right?  Second, was the right clearly established at the relevant time?  *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc).  If the answer to either question is no, the qualified immunity defense prevails. *See id*. (explaining that the court may answer the questions in either order).  To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official

would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "[I]n the light of pre-existing law the unlawfulness must be apparent."  *Id.*  Reciting an abstract right at a high level of generality will not suffice. *Id.* at 639-40.

### Counts 9 and 10 – Excessive Use of Force Claims

In Counts 9 and 10 plaintiffs assert defendants Beeman, Gugliano, McNail, Livingston, and Lincoln County used excessive force against them during their arrest and seizure.  "In addressing an excessive force claim under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force."  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  "[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  *Id*. at 395.  In this case the alleged excessive use of force occurred during the arrest and seizure of plaintiffs.  Therefore, the Court analyzes plaintiffs' claims under the Fourth Amendment rather than the Fourteenth Amendment.

"To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances."  *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).  The Court considers the claim "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id*. (quoting *Graham*, 490 U.S. at 396).  "Circumstances relevant to the reasonableness of the officer's conduct include the 'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  *Id*.

In this case, plaintiffs audio and video recorded their encounter with the defendant officers, beginning the recording in their vehicle as they were driving up the street to 2 Pico

6

Court, noting a large number of police vehicles and the presence of officers. At the beginning of the recording, plaintiff Cartia made the following oral statement while driving up to the residence:

> It is April 20, Friday, at 5:54 p.m. The cops have just arrived at my parents' house a little bit ago. They are claiming that if I go up there to record them that I am interfering with police action. Everyone knows that's complete bullcrap! I have the right to move wherever I want, and I have the freedom of speech, my First Amendment which protects me for [(unclear word)] of peace. This is a private neighborhood and a private property inside of that private neighborhood. Therefore, especially with them being my parents and my address at that place . . . . [Both plaintiffs orally state that the police have no warrant.]

(Video.[1]) Plaintiffs then stepped out of the vehicle, continuing to record their walking up the driveway to the officers, Cartia loudly demanding that the officers state their badge numbers and names, and continuing to approach the officers after being instructed to stay back on the driveway. (*Id.*; Doc. 55-2, Cartia Depo. 55-56, Exh. B).

This Court must analyze the conduct of each officer separately. *McReynolds v. Schmidli*, 4 F.4th 648, 655 (8th Cir. 2021) (because an officer may be held liable only for his or her own use of excessive force, the court reviews officer's actions separately); *Wilson v. Northcutt*, 441 F.3d 586, 591 (8th Cir. 2006) (liability under § 1983 is personal, and each defendant's conduct must be independently assessed).

### Detective Bradley Beeman

Plaintiff Cartia argues Detective Beeman used force which was unreasonable and unnecessary at the time of his arrest in violation of the Fourth Amendment. He contends Beeman used a hip toss, slamming him on his face, even though he was not resisting arrest, had not committed a crime, and was handcuffed behind his back. He asserts Beeman

---

[1] Both sides have submitted the audio-video recording to the Court, plaintiffs as Doc. 77-10 and defendants as Doc. 55-1. References to this recording in this Memorandum Opinion are stated as "Video."

punched and slapped him several times in the face while he was face down on the ground, handcuffed and not resisting. Cartia asserts Beeman held him on the ground by placing his knee in the back of his neck and that Beeman held the position even though he told him he could not breathe.

      The uncontroverted evidence, however, shows that Beeman was confronted by Cartia, who was visibly angry and who continued to shout and approach officers after being instructed to stand back. (Doc. 55-1; Doc. 55-2, Cartia Depo. pp. 55-56, Exh. B; Doc. 55-4, Beeman Aff., Exh. D.) Beeman placed Cartia under arrest, and Cartia then became more upset and shouted: "Don't touch my girlfriend, you fuckers!" When Cartia pulled against the handcuffs, Beeman used a hip toss to bring him to the ground as Cartia reasonably appeared to be resisting. Beeman sustained a small laceration to his hand. (Doc. 55-4, Beeman Aff. ¶¶ 34-36, Exh. D; Doc. 55-8, Incident Report, p. 6, Exh. H; Doc. 55-9, Use of Force Report, pp. 6, 11, Exh. I.) Cartia testified that Beeman held him down on the ground for three or four minutes. (Doc. 55-2, Cartia Depo. p. 72, Exh. B.) Cartia also claims that while being wrestled to the ground, Beeman slapped him in the face and pressed down on the back of his neck. Beeman had no physical contact with plaintiff Adams. (Doc. 55-3, Adams Depo. 39:3-8, Exh. C.)

      As a matter of law, the use of force by Beeman was not excessive under the Fourth Amendment. An officer is entitled to use force when a subject at least appears to be resisting. *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017). In *Ehlers*, the plaintiff claimed excessive force where an arresting officer shoved the plaintiff down to the ground, pushed his head down, and handcuffed him behind his back. *Id.* at 1007. The Eighth Circuit held the takedown was not excessive because the plaintiff "at least appeared to be resisting" and, therefore, the officer was entitled to use this force to restrain him. *Id.* at 1011. Here, like in *Ehlers*, Cartia at least appeared to be resisting, and Beeman's takedown of Cartia was no more severe than the use of force at issue in *Ehlers*. Accordingly, Beeman was justified in his conduct under the circumstances he encountered. This Court may not now in hindsight second guess Beeman's use of force during this arrest

8

in light of plaintiff Cartia's very apparent, threatening, and disruptive conduct. *Id.* at 1011; *see also Kohorst v. Smith*, 968 F.3d 871, 877-79 (8th Cir. 2020) (affirming grant of summary judgment; officer's arm-bar takedown, push to the ground, and use of taser did not constitute unreasonable use of force); *Blazek v. City of Iowa City*, 761 F.3d 920, 923 (8th Cir. 2014) (excessive force claim may be rejected even though plaintiff had only been passively resisting arrest, officer "forcefully threw" plaintiff to the ground, pinned him down, and placed his weight into the plaintiff's back before handcuffing him); *cf., Karels v. Storz*, 906 F.3d 740, 745 (8th Cir. 2018) (takedowns are appropriate when officers face noncompliant arrestees under threatening or dangerously unpredictable circumstances).

As a result, the Court concludes Beeman's take down of Cartia did not violate a constitutional right.

### Detective Kevin Gugliano

Cartia's excessive force claim against Detective Gugliano also fails as a matter of law. Gugliano assisted in Cartia's arrest by helping restrain and carry Cartia to the patrol car to be transported to the County Jail. Cartia testified at his deposition that he called Gugliano "a f'ing scumbag and a piece of shit cop." (Doc. 55-2, Cartia Depo. 52:3-5, Exh. B.) He further testified that Gugliano thrust his head against the car door while being placed in the patrol car and choked him while holding him down inside the car. (Cartia Depo. pp. 51-52, Exh. B.) Gugliano also assisted in placing Adams in handcuffs and instructed her to sit down on the lawn after she reached out toward Beeman during Cartia's arrest. (Adams Depo. pp. 16-17, Exh. C.)

These facts, viewed in the light most favorable to plaintiffs, are insufficient to make a submissible claim of excessive force against Gugliano. *See e.g.*, *Kelsay v. Ernst*, 933 F.3d 975 (8th Cir. 2019). In *Kelsay*, the female plaintiff was dressed only in swimwear, and the officer went to arrest her for attempting to interfere with another arrest. After the officer arrived at the poolside, Kelsay began to walk away from him and towards her daughter who was involved in a verbal altercation with a patron near the pool exit. The

9

officer followed Kelsay, grabbed her arm, and instructed her "get back here." *Id.* at 978. Kelsay stopped walking and turned to face the officer at which time the officer released her arm. Kelsay told the officer that "some bitch is talking shit to my kid and I want to know what she's saying." *Id.* Kelsay turned away from the officer and continued walking toward her daughter. Officer Ernst then grabbed Kelsay, placed her in a "bear hug," and threw her to the ground, breaking her clavicle. *Id.* The Eighth Circuit held these facts did not establish a Fourth Amendment violation and therefore Kelsay's excessive force claim against the officer failed as a matter of law. *Id.* at 981 (stating in part, "a reasonable officer in Ernst's position could have believed that it was important to control the situation and to prevent a confrontation . . . .")

The evidentiary record proffered in this case indicates that the factual circumstances facing Gugliano were more disruptive and threatening than those in *Kelsay*. And the type and level of force alleged against Gugliano was much less severe and injurious than in *Kelsay*. *See also Kohorst v. Smith*, 968 F.3d 871, 877-79 (8th Cir. 2020) (holding that officer's arm bar takedown, push to the ground, and use of taser did not constitute unreasonable use of force).

The Court concludes that plaintiffs have failed to present evidence of a submissible claim for excessive force against Officer Gugliano.

**Detectives Mason McNail and Timothy Livingston**

Plaintiffs broadly allege without providing any specific facts that Detectives McNail and Livingston used excessive force against them. However, the evidence shows that neither McNail nor Livingston participated in Cartia's arrest. McNail did not touch or injure either of the plaintiffs. (Cartia Depo. 67:22-25, 68:1-13, Exh. B; McNail Aff. ¶ 10, Exh. G.) Livingston did not touch Cartia. At the direction of McNail, Livingston handcuffed and detained Adams while she sat on the front lawn of the Pico Court residence. (Doc. 55-2, Cartia Depo. 56:24-25, 57:1-6, Exh. B; Doc. 55-5, Livingston Aff. ¶ 29, Exh. E).

As plaintiffs have presented no evidence to suggest that either McNail or Livingston used any force that can be deemed "excessive," plaintiffs' excessive force claims against McNail and Livingston fail as a matter of law.

**Qualified Immunity and Excessive Force Claims**

It is established that the use of objectively unreasonable force violates the Fourth Amendment. *Boudoin v. Harsson*, 962 F.3d 1034, 1039 (8th Cir. 2020). But in determining whether a plaintiff may claim that a defendant violated a clearly established law or right, plaintiff must do more than refer generally to such a right. "'[C]learly established law' may not be defined at a 'high level of generality.'" *Id*. In the Fourth Amendment context, specificity is particularly important. *Sok Kong Trustee for Map Kong v. City of Burnsville*, 960 F.3d 985, 992 (8th Cir. 2020). The Supreme Court has recognized "that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Id*. at 1153; *see also Kelsay v. Ernst*, 933 F.3d 975, 980 (8th Cir. 2019).

Here, plaintiffs have provided no case precedent that places the question of their rights, in the relevant factual circumstances, demarked by a "bright line." *See Boudoin*, 962 F.3d at 1039-40 (generally, a plaintiff must identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment); *Cf. Davis v. Hall,* 375 F.3d 703, 712 (8th Cir. 2004) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."). Nor can the Court find any precedent that clearly establishes that an officer violates the Fourth Amendment ban on excessive force when individuals, such as plaintiffs here, actively interfere with law enforcement activity. No existing precedent "clearly established" that the conduct of any of the

11

defendant officers amounted to an excessive use of force in violation of the Fourth Amendment. Therefore, like *Kelsay*, each of the defendant officers is entitled to qualified immunity on plaintiffs' use of excessive force claims. The Court grants summary judgment in their favor on these claims.

### Counts 15 and 16 – Claims for Cruel and Unusual Punishment

It is undisputed that plaintiffs spent the night at the Lincoln County Jail, were released the following day, and that Correctional Officers Rebecca Carroll and Katie Brooks worked at the jail that night. Plaintiffs allege that Carroll and Brooks punished them by depriving them of certain hygiene practices and by placing Cartia in a restraint chair at the jail in violation of the Due Process Clause of the Fourteenth Amendment.

Cartia contends that upon his arrival at the jail, he was not aggressive, was not violent, and was compliant with correctional officers and staff. Cartia testified that he believed he was placed in a restraint chair solely in order to punish him and "teach [him] a lesson." (Doc. 55-2, Cartia Depo. at 32, Exh. B.) He argues this violated the jail's own policy and procedure that requires restraint chairs be used only when a detainee is violent or aggressive.

The uncontroverted evidence reveals the following. Matthew Cartia testified at his deposition that he was held in the restraint chair for "10 to 15 minutes." (Docs. 55-2, 77-11, Cartia Depo. 44-45.) Both Cartia and Adams testified that they sustained no injuries as a result of the conduct of either Carroll or Brooks. Cartia testified at his deposition that Carroll did not injure him in any way. (Cartia Depo., 41:11-13, Exh. B). Adams likewise testified at her deposition that neither Carrol nor Brooks injured her in any way. (Doc. 55-3, Adams Depo. 26:10-12, 23-25, Exh. C).

The case cited by plaintiffs, *Hope v. Pelzer*, 536 U.S. 730, 743-45 (2002), is not at all analogous. In that case, the Supreme Court held that the defendant state prison officials' act of cuffing an inmate to a hitching post outside for seven hours, while shirtless in the hot sun, violated clearly established constitutional standards.

Based on the above, the defendants are entitled to summary judgment on plaintiffs' claims of cruel and unusual punishment.

**Qualified Immunity**

Moreover, Carroll and Brooks are entitled to qualified immunity on plaintiffs' claims of cruel and unusual punishment. Plaintiffs have not provided "controlling authority" or "a robust 'consensus of cases of persuasive authority'" that "placed the statutory or constitutional question beyond debate" at the time of the alleged violation. *Ashcroft v. al-Kidd*, 563 U.S. 731, at 741-42 (1999). In other words, plaintiffs have provided no caselaw holding that detaining an arrestee overnight without certain hygiene items or placing an arrestee in a restraint chair for ten to fifteen minutes amounts to cruel and unusual punishment. Accordingly, Carroll and Brooks are entitled to qualified immunity from liability on plaintiffs' claims in Counts 15 and 16.

**Counts 11 and 12 – Claims for Malicious Prosecution**

Counts 11 and 12 assert claims for malicious prosecution against Beeman, Gugliano, McNail, Livingston, and Lincoln County. These claims fail as a matter of law. Section 1983 only provides a remedy for violations of rights expressly secured by federal statutes or the U.S. Constitution. *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001). The Constitution does not mention malicious prosecution nor do plaintiffs cite a basis for a federal cause of action for malicious prosecution. Further, the Eighth Circuit has uniformly held that malicious prosecution by itself is not cognizable under § 1983 because it does not allege a constitutional injury. *Id.*; see also Tech Ordinance Inc., v. United States, 244 F.3d 641, 650 (8th Cir. 2001) (an action for malicious prosecution does not state a claim of constitutional injury).

Even assuming *arguendo* the existence of such a federal cause of action, the presence of probable cause to prosecute plaintiffs would defeat their claims. Here, the video recording evidence before the Court establishes such probable cause. It shows

13

plaintiffs intentionally interfering with ongoing law enforcement activity and resisting arrest.  *See Joseph v. Allen*, 712 F.3d 1222, 1228 (8th Cir. 2013) (noting that even if *Kurtz* did not preclude a malicious prosecution claim, the existence of probable cause to arrest and initiate a criminal prosecution would merit summary judgment for officers on such a claim).  Accordingly, plaintiffs' § 1983 claims for malicious prosecution fail as a matter of law.

### Count 20 – Claim for Unconstitutional Custom or Policy

In Count 20 plaintiffs generally allege that Lincoln County and Sheriff John Cottle had several customs and usages that rose to the level of policy and that led to the violation of plaintiffs' rights.  In support, they note that there have been 22 civil lawsuits brought against Lincoln County and its Sherriff's Department for claims of excessive force, malicious prosecution, and civil rights violations in the 10 years preceding the April 20, 2018 incident at issue here.  They argue it was the actions of Sheriff Cottle and Lincoln County that allowed these constitutional violations to occur.

Defendants argue this claim fails because plaintiffs have failed to proffer evidence of an approved policy or custom that drove or directed the conduct alleged against the defendants.  The Court agrees.

Plaintiffs establish § 1983 municipal liability if they prove that their constitutional rights were violated by "an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a custom or usage with the force of law.'"  *Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998).  "[A]bsent a constitutional violation by a city employee, there can be no § 1983 or *Monell* liability for the City."  *Whitney v. City of St. Louis*, 887 F.3d 857, 861 (8th Cir. 2018).  To show a "custom or usage," plaintiffs must prove "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the

14

officials of that misconduct; and (3) an injury by acts pursuant to the governmental entity's custom." *Mitchell v. Kirchmeier*, 28 F.4th 888, 899-900 (8th Cir. 2022) (cleaned up).

Plaintiffs have presented no substantial evidence that Lincoln County or John Cottle ever had an official policy that authorized the conduct plaintiffs allege against the individual officers. Nor have plaintiffs shown that Lincoln County or John Cottle permitted their deputy Sheriffs to regularly or customarily abuse or mistreat arrestees. To show such, plaintiffs must present evidence of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the [deputies]." *McReynolds v. Schmidli*, 4 F.4th 648, 656 (8th Cir. 2021); *cf. Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) (holding that two instances of excessive force are not a pattern of widespread and pervasive conduct); *Smith v. Watkins*, 159 F.3d 1137, 1138 (8th Cir. 1998) (noting that two specific complaints and various rumors about an officer were not sufficient to establish a policy or custom of condoning unconstitutional conduct).

Therefore, defendants Lincoln County and John Cottle are entitled to summary judgment.

## PLAINTIFFS' STATE LAW CLAIMS

### Counts 1-8, 13-14, 17-18, and 19

In their FAC, plaintiffs also allege state law claims for assault and battery, malicious prosecution, false arrest, false imprisonment, negligence, and dereliction of duty. Defendant officers argue they are shielded from liability for plaintiffs' state law claims by the doctrine of official immunity. Plaintiffs counter that official immunity should be denied because while subduing and arresting plaintiffs, the defendant officers were performing a "ministerial" rather than a "discretionary" function.

Missouri applies the doctrine of official immunity to protect "public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008) (en banc); *Letterman v. Does*, 859 F.3d 1120, 1125 (8th Cir.

15

2017). "The official immunity doctrine, however, does not provide public employees immunity for torts committed when acting in a ministerial capacity." *Southers, id*. "A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued," *id*., while a ministerial function "is one of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id.* Which category an act falls into is determined "on a case-by-case basis" considering three factors: "(1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity." *Id., Letterman v. Does*, 859 F.3d at 1125-26. An act is discretionary where "there is any room whatsoever for variation in when and how a particular task can be done." *Davis v. Buchanan Cnty. (Davis II)*, 11 F.4th 604, 629 (8th Cir. 2021).

"An 'officer's decision to use force in the performance of his duties is discretionary.'" *Boude v. City of Raymore*, 855 F.3d 930, 935 (8th Cir. 2017) (applying Missouri law); *Davis v. White (Davis I)*, 794 F.3d 1008, 1013 (8th Cir. 2015); *Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002) (applying official immunity to a case involving state law claims of battery, assault, and excessive force); *Richardson v. Sherwood*, 337 S.W.3d 58, 63 (Mo. Ct. App. 2011) (citing cases applying official immunity to intentional tort claims of false imprisonment, assault, and malicious prosecution); *DaVee v. Mathis*, 812 S.W.2d 816, 827 (Mo. Ct. App. 1991) (officers were entitled to official immunity on the plaintiff's assault claim).

In order to overcome official immunity, plaintiffs must present evidence that shows the defendant officers' conduct was "done in bad faith or with malice." S*tate ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. 1986); *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. 2019) (official immunity protects officials who act within the course of their official duties and without malice). Bad faith "requires 'a dishonest purpose, moral

16

obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive,'" while malice "involves actions that are 'so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or [an] improper or wrongful motive.'" *N.S. ex rel. Lee v. Kansas City Bd. of Police Comm's*, 35 F.4th 1111, 1115 (8th Cir. 2022) (applying Missouri law).  "In Missouri, a bad-faith allegation survives summary judgment if a plaintiff states 'facts from which it could reasonably be inferred that [defendant] acted in bad faith or from an improper or wrongful motive.'" *Boude*, 855 F.3d at 935.

Here, the defendant officers responded to plaintiffs' disruptive conduct by verbally warning them to stay back and then subduing and arresting them when their warnings were not obeyed.  In their opposition, plaintiffs have failed to show this response was "ministerial" rather than "discretionary" for purposes of official immunity.  Nor have they presented the substantial evidence that any individual defendant acted with bad faith or malice.  As a result, the Court concludes each of the defendants is entitled to official immunity and plaintiffs' state law claims fail as a matter of law.

### Motion for Reconsideration  / Motion to Strike

Plaintiffs also move for reconsideration of this Court's November 18, 2022 and December 15, 2022 orders denying them leave to endorse an expert and engage in discovery out of time. [Doc. 74.] They argue that any delays in endorsing an expert were caused by defendants' conduct.  After giving careful consideration to the motion for a third time, the motion is denied.

In response to plaintiffs' motion for reconsideration, defendants moved to strike plaintiff's expert report [Doc. 80].   The Court denies the motion as moot.

### III.  CONCLUSION

Based on all of the foregoing,

**IT IS HEREBY ORDERED** that the motion of defendants for summary judgment **[Doc. 53] is GRANTED.**

**IT IS FURTHER ORDERED** that the motion of plaintiffs for reconsideration **[Doc. 74] is DENIED.**

**IT IS FURTHER ORDERED** that the motion of defendants to strike plaintiffs' expert report **[Doc. 80] is DENIED as moot.**

**IT IS FURTHER ORDERED** that the motion of plaintiffs to compel **[Doc. 82] is DENIED as moot.**

**IT IS FURTHER ORDERED** that the trial setting of this action is vacated.

An appropriate Judgment Order dismissing this action with prejudice is filed herewith.

                                                  **/s/ David D. Noce**
                                       **UNITED STATES MAGISTRATE JUDGE**

Signed on March 7, 2023.